# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# NORTHERN DIVISION AT COVINGTON

| | |
|---|---|
| **BRANDI STEWART**, *et al.*, | Case No. 2:15-cv-52 |
| Plaintiffs, | |
| v. | Judge David L. Bunning |
| **TYLER BROCKMAN**, *et al.*, | Magistrate Judge J. Gregory Wehrman |
| Defendants. | **PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Pursuant to Fed R. Civ. Proc. 56(a) Plaintiffs move for Partial Summary Judgment against Defendants Boone County and Sheriff Helmig in his official capacity. Specifically, Plaintiffs seek a ruling that the Boone County use of force policy (Exh. A) is unconstitutional because it directs officers to use force based on a subjective standard rather than the objective standard of a reasonable police officer in like or similar circumstances. Such subjective policies were declared unconstitutional in *Graham v. Connor*, 490 U.S. 386 (1989). Plaintiffs seek a ruling that Boone County's written policy was a moving force behind Defendant Brockman's use of force in this case.

## MEMORANDUM

**I.     INTRODUCTION**

This case involves the fatal shooting of Samantha Ramsey by Deputy Tyler Brockman on April 26, 2014. Tyler Brockman acted pursuant to Defendant Boone County's written use of force policy, which advises deputies who use force to consider whether they are acting in "good

1

faith" or "maliciously." Such policies were declared unconstitutional by the Supreme Court 27 years ago in *Graham v. Connor*, 490 U.S. 386 (1989).  In *Graham*, the Supreme Court held that a use of force policy that "requires consideration of whether the individual officers acted in 'good faith' or 'maliciously and sadistically for the very purpose of causing harm,' is incompatible with a proper Fourth Amendment analysis." *Graham,* 490 U.S. 397.  The proper analysis is a "reasonableness inquiry" – "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Id*. at 397.

Plaintiffs bring this motion for partial summary judgment because there are no material questions of fact about Boone County's written use of force policy and whether it was the moving force behind Tyler Brockman's use of force.  Provided the Court rules in favor of the Plaintiffs, this motion will lead to judicial efficiency as it will narrow the issues for the fact-finder.  Finally this motion should serve as a wake-up call to Boone County, causing it to update its unconstitutional policy, and begin training its officers to follow the long-established body of law defining excessive force.

**II.     FACTS**

On April 26, 2014, Boone County Sheriff Deputy Tyler Brockman killed Samantha Ramsey as she was driving away from a field party with three passengers in her car.  The estate of Samantha Ramsey and the three passengers, Tevin Harmon, Bobby Turner, and Chelsey Pendleton, have sued Tyler Brockman and Boone County for constitutional violations and tort claims. Boone County's use of force policy advises its deputies to make use of force decisions using the factors described in *King v. Blankenship,* 636 F. 2d 70 (4th Circuit, 1980) "as a guide."

(Use of Force Policy attached as Exh. A, DEF000413). Namely, deputies are told to consider the:

> 1. *Need for the application of force;*
> 2. *Relationship between the need and the amount of force that was used;*
> 3. *Extent of injury inflicted proportional to subjects level of resistance or threat to the deputy or another; and*
> 4. *Whether the force was applied in a good faith effort, based on the perceptions of a reasonably trained deputy and the objectively reasonable facts the deputy had at the time of the incident, to maintain and restore order or maliciously used for the very purpose of causing injury.*

(Exh. A, DEF000413).

Boone County's use of force policy does not reference the seminal Supreme Court case of *Graham v. Connor*, 490 U.S. 386 (U.S. 1989), which has defined excessive force for the last 27 years. Boone County's use of force policy was approved by Sheriff Helmig. (Doc. #: 82, Helmig Depo. 29:10-14). The policy allows officers to use force based on their subjective perceptions and not based on the objective factors that must guide a reasonable officer.

Sheriff Helmig agreed that the policy section above is "one of the standards [he] look[s] to as [he's] trying to figure out whether the force used is reasonable." (Helmig Depo. p. 179:3-22). Sheriff Helmig testified he reviewed Deputy Brockman's use of deadly force on Samantha Ramsey using Boone County's unconstitutional use of force policy. (Helmig Depo. p. 39:1-7). And as Helmig reviewed Brockman's use of force, he "trust[ed] Tyler Brockman's perception of the facts." (Helmig Depo. 175:23-176:10). When Helmig was pressed on whether he used "any witnesses or scientific evidence … to test Brockman's perceptions," Helmig responded, "I don't know how I would test his perception." (Helmig Depo. 159:8-13). When shown a witness statement that indicated Brockman's perceptions were inaccurate, Helmig ignored those

3

statements and re-affirmed his "conclusion based on what [Brockman] had said." (Helmig Depo. 157:5-159:7). This unquestioning reliance on the subjective perceptions and motivations of police officers is what *Graham* sought to correct. Boone County's policy instructs its deputies that their subjective perceptions and motivations should guide their use of force decisions. This helps explain why Brockman testified that he followed the Boone County Sheriff use of force policy and did nothing wrong. (Doc. #: 84, Brockman Depo. 115:10-116:13). Brockman was taught that his perceptions and motivations were relevant to his decision to use deadly force. This instruction was unconstitutional and it was a moving force behind Tyler Brockman's use of force.

Boone County and Sheriff Helmig have asked this court for summary judgment on Plaintiffs' § 1983 municipal liability claims. (Doc #: 68, p. 39-44). Their arguments focus on Boone County's liability under the "failure to train" and "ratification" forms of municipal liability. However they do not mention, cite, or attach Boone County's written use of force policy which is the subject of this Motion for Partial Summary Judgment.

### III. ARGUMENT

#### A. Standard for Determining Motion for Partial Summary Judgment on *Monell* Claim

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The evidence presented is construed in the light most favorable to the non-moving party, which is given the benefit of all favorable inferences that can be drawn from them. *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655 (1962); *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). "The central issue is 'whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Spadafore v. Gardner*, 330 F.3d 849, 852 (6th Cir. 2003)(quoting *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 251-252 (1986)).

Fed. R. Civ. P. 56(a) provides that "a party seeking to recover upon a claim … may … move for summary judgment in the party's favor upon all *or any part thereof*." (Emphasis added). "The rule clearly states that a motion for summary judgment may be brought on a claim 'or any part thereof.' " *France Stone Co. v. Charter Twp. of Monroe*, 790 F. Supp. 707, 710 (E.D. Mich. 1992) (granting partial summary judgment on one element of a claim with two elements).

This motion seeks partial summary judgment on Plaintiffs' *Monell* claim against Defendant Boone County and Sheriff Helmig in his official capacity. "To establish municipal liability under section 1983, the plaintiff must establish that: (1) the plaintiff's harm was caused by a constitutional violation; and (2) the city was responsible for that violation." *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009). Plaintiffs are not moving for summary judgment on whether the Plaintiffs suffered a constitutional violation because there are contested issues of fact about the shooting that require submission to a jury. This motion asks the Court to hold that if Plaintiffs prove at trial that they suffered a constitutional violation, then Boone County is liable for that violation because its written use of force policy was a moving force behind the constitutional violation. It is common for courts to render judgment on municipal liability at the summary judgment stage even where there is a contested issue of fact regarding the underlying constitutional violation. *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 311 (6th Cir. 2005)(denying qualified immunity because questions of fact regarding false arrest, but granting

summary judgment on municipal liability because no issues of fact); *Amerson v. Waterford Twp.*, 562 F. App'x 484, 492 (6th Cir. 2014) (denying qualified immunity because questions of fact regarding use of force, but granting summary judgment on municipal liability where no issues of fact).

A municipality's liability is proven by showing a municipal policy was the moving force behind the constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). The clearest type of policy is one formally embodied in a "policy statement, ordinance, regulation or decision officially adopted and promulgated" by a municipal policy-maker. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) (formal policy required women to take unpaid medical leave for pregnancy). These municipal policies are typically intended to "establish fixed plans of action to be followed under similar circumstances, consistently and over time." *Pembaur v. Cincinnati*, 475 U.S. 469, 480-81 (1986). "Accordingly, proof that a municipality's legislative body or authorized decision-maker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 405 (1997). "It is not necessary for § 1983 liability that the [defendants] directed any particular action with respect to these specific [plaintiffs], only that they affirmatively promoted a policy which sanctioned the type of action which caused the violations." *Duchesne v. Sugarman*, 566 F.2d 817, 831 (2d Cir. 1977).

Plaintiffs bring this motion because there are no questions of fact about whether Deputy Brockman was acting pursuant to Boone County's unconstitutional written use of force policy. Boone County's use of force policy was intentionally adopted to guide deputies using force on citizens, like Deputy Brockman did in this case.

### B. The Boone County Sheriff Department's Written Use of Force Policy is Unconstitutional

Defendant Boone County's written use of force policy is based on a statement of law that was declared unconstitutional by the Supreme Court 27 years ago in *Graham v. Connor*, 490 U.S. 386 (1989). The Boone County Sheriff Department's written use of force policy defines excessive force as follows:

> F. <u>Excessive Force</u> - *force is excessive when its application is inappropriate to the circumstances, which may result in physical injury or death of a suspect. No comprehensive objective definition of excessive force can be offered; each situation must be evaluated according to the particular circumstances unique to the event under review.*
>
>    a) *As a guide, King v. Blankenship, 636 F. 2d 70 (4th Circuit, 1980) established four (4) considerations in determining whether force was excessive:*
>
>       1. *Need for the application of force;*
>       2. *Relationship between the need and the amount of force that was used;*
>       3. *Extent of injury inflicted proportional to subjects level of resistance or threat to the deputy or another; and*
>       4. *Whether the force was applied in a good faith effort, based on the perceptions of a reasonably trained deputy and the objectively reasonable facts the deputy had at the time of the incident, to maintain and restore order or maliciously used for the very purpose of causing injury.*

(Exh. A, DEF000413)

This policy gives Boone County deputies unconstitutional guidance on when and how much force is appropriate. The Supreme Court has expressly stated that a use of force test that "requires consideration of whether the individual officers acted in 'good faith' or 'maliciously and sadistically for the very purpose of causing harm,' is incompatible with a proper Fourth Amendment analysis." *Graham*, 490 U.S. at 397. In *Graham*, the Court overturned *Johnson v. Glick*, 481 F.2d 1028 (2d Cir. 1980), admonishing that "the 'malicious and sadistic' factor puts in issue the subjective motivations of the individual officers, which our prior cases make clear

7

has no bearing on whether a particular seizure is unreasonable under the Fourth Amendment." *Id*. Boone County's use of force policy is drawn directly from *Johnson v. Glick*. *See King v. Blanckenship*, 636 F.2d 70, 73 (4th Cir. 1980) ("The precise formulation of when the excessive use of force gives rise to a cause of action under § 1983 is not an easy one, but in *Johnson v. Glick*, 481 F.2d at 1083, the factors to be considered were identified as follows…"). Boone County's use of force policy has been unconstitutional since 1989 when the Supreme Court ruled that an excessive force "inquiry is one of 'objective reasonableness' under the circumstances, and subjective concepts like 'malice' … have no proper place in that inquiry." *Graham*, 490 U.S. at 398.

*Graham* gives police officers objective guidance on when to use force. *Graham* advises officers to pay attention to the facts and circumstances they are presented with, "including (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting or (4) attempting to evade arrest by flight." 490 U.S. at 396. These factors protect the public from becoming victims of excessive force by giving them a survival guide for encounters with the police – don't commit severe crimes, don't threaten harm, don't resist, and don't flee. Boone County's policy endangers the public because it authorizes deputies to use force so long as they act in "good faith" and not "maliciously." These subjective state-of-mind factors provide the public with no safety from excessive force because the public has no control over an officer's "underlying intent or motivation." *Id*. at 397. That is why "an officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id*. There are portions

8

of the Boone County use of force policy that resemble language found in *Graham*, but these portions of the policy are undercut by the portions allowing deputies to use force based on their subjective state of mind. Any use of force policy that directs officers that their "good faith" is relevant to their use of force decisions is unconstitutional. It cannot be cured by also having references to reasonableness. The Boone County Sheriff has ignored the public's constitutional right to be free from unreasonable seizures for far too long.

Boone County Sheriff Michael Helmig testified that he uses Boone County's unconstitutional "good faith" standard to determine whether his deputies use excessive force. (Helmig Depo. 179:8-22). Using this unconstitutional analysis, Sheriff Helmig determined Brockman followed the Boone County use of force policy. (Helmig Depo. 39:1-7). In fact, using this policy, Helmig *always* approves his deputies' uses of force. Since Helmig became Sheriff in 1998, he has *never* disciplined an officer for using excessive force. (Helmig Depo. 11:8-10, 167:5-8).

Reviewing previous incidents, Plaintiffs' counsel found numerous instances where the degree of force was questionable, but was approved using this subjective standard. In one incident the deputies tased a suspect who was in bed in his own home. (Armstrong Use of Force Report, Exh. B). In another, deputies used "hand to hand contact" with a person during the service of a summons just because he declared a future intent not to go to court. (Homan Use of Force Report, Exh. C). In another, deputies went hands-on with a woman who they were serving a mental health warrant on because she tried to make a phone call. (Stricker Use of Force Report, Exh. D). And in another, a student was pepper sprayed in a high school for refusing to go to the principal's office. (Miller Use of Force Report, Exh. E). Of these uses of force, only the

9

mentally ill woman was interviewed afterwards by the on-duty supervising officer. Sheriff Helmig testified he has never interviewed people injured by his deputies or directed his deputies to interview them to complete a use of force review. (Helmig Depo. 270:20-24, 289:14-18).When asked why he just relied on one officer's account of a use of force rather than conduct interviews, he testified that he "trusted Deputy Booher, yes sir, I did; very honest man." (Helmig Depo. 292:4-293:6). This sort of unquestioning reliance on the subjective accounts of deputies was what *Graham* sought to stop by adopting an objective reasonableness test.

When Sheriff Helmig reviewed Defendant Brockman's use of force on Samantha Ramsey, he also relied on Brockman's subjective perceptions and motivations:

```
23      Q.   Okay.  So having made a determination
24   that the force used in this case was reasonable,
25   can you just tell me what you concluded as to why
 1   Tyler Brockman shot Samantha Ramsey?  What was
 2   your conclusion about that?
 3      A.   Because he was in fear of serious
 4   physical injury to himself.  And I came to the
 5   conclusion that he did not violate our
 6   use-of-force policy.
 7      Q.   So did you trust Tyler Brockman's
 8   perception of the facts related to this fear of
 9   his serious physical injury?
10      A.   Yes.
```

(Helmig Depo. 175:23-176:10). Helmig trusted Brockman's perceptions even though when Brockman was on the hood of Samantha Ramsey's Subaru, Brockman was thinking about his wife and about buying a car instead of conducting a threat assessment and analyzing what degree of force was necessary based on the objective facts and circumstances he faced. (Helmig Depo. 176:11-178:8, 185:14-21).

10

The Fourth Amendment requires that officers use only the reasonably necessary degree of force when carrying out their duties. This requirement is not suspended when an officer chooses to jump on the hood of the car. Even then – especially then – the officer must stay in that moment, conduct an ongoing assessment of the threat he is facing, and make his decision to use force based on the facts and circumstances he is facing. *See Dickerson v. McClellan*, 101 F.3d 1151, 1162 (6th Cir. 1996) (noting that the "moments preceding the shooting" are the most important when analyzing whether an officer acted reasonably). Boone County's use of force policy does not require officers to make their use of force decisions based on the objective facts and circumstances presented to them. Instead it allows them an "out" if they say, "I was acting in good faith." Officers are not allowed such an "out" under the Fourth Amendment. Either they properly analyzed the objective facts and circumstances and responded with the appropriate degree of force, or they did not. Their state of mind is irrelevant.

## IV.  CONCLUSION

Defendant Boone County's use of an unconstitutional use of force policy endangers the community and was a moving force behind Samantha's death. As a result, this Court should grant this motion and render partial summary judgment against Boone County. Specifically, this Court should hold that the Boone County use of force policy (Exh. A) is unconstitutional because it directs officers to use force based on a subjective standard rather than based on the objective standard of a reasonable police officer in like or similar circumstances. If this motion is granted, the sole remaining constitutional question for trial will be whether Deputy Brockman violated Plaintiffs' constitutional rights on April 26, 2014.

Respectfully submitted,

| | |
|---|---|
| s/ Adam Gerhardstein<br>Alphonse A. Gerhardstein<br>*Trial Attorney for All Plaintiffs*<br>Adam Gerhardstein<br>Attorney for Plaintiffs<br>Gerhardstein & Branch, Co LPA<br>441 Vine Street, Suite 3400<br>Cincinnati, Ohio 45202<br>(513) 621-9100<br>Fax (513) 345-5543<br>agerhardstein@gbfirm.com<br>adamgerhardstein@gbfirm.com<br><br>Colleen M. Hegge<br>8667 HWY 42, Suite 300<br>Union, Kentucky 41091<br>(859) 384-4300 ext. 101<br>chegge@nkyattorney.org<br>*Attorney for Plaintiffs Tevin Harmon,*<br>*Chelsey Pendleton and Bobby Turner* | Gary F. Franke<br>Michael O'Neill<br>GARY F. FRANKE CO., L.P.A.<br>*Attorneys for Plaintiff Brandi Stewart*<br>120 East 4th Street - Suite 1040<br>Cincinnati, Ohio 45202<br>(513) 564-9222<br>Fax (513) 564-9990<br>gff@garyfrankelaw.com<br>MDO@garyfrankelaw.com<br><br>Ryan J. Reed<br>Law Office of Ryan J. Reed, PLLC<br>401 Madison Avenue<br>Covington, KY 41011<br>(859) 307-9000<br>Fax (859) 491-9854<br>reed.law@live.com<br>*Attorney for Plaintiffs Tevin Harmon,*<br>*Chelsey Pendleton and Bobby Turner* |

**CERTIFICATE OF SERVICE**

I hereby certify that on October 31, 2016, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that a copy of the foregoing pleading and the Notice of Electronic Filing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically.

s/Adam Gerhardstein
Attorney for Plaintiff